```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                              LEXINGTON
```

MARSHA JOHNSON, *et al.*,      )
                               )
                               ) Civil Action No. 5:03-425-JMH
      Plaintiffs,              )
                               )
v.                             )
                               )
WALTER KIDDE, *et al.*,        )
                               ) **MEMORANDUM ORDER AND OPINION**
                               )
      Defendants.              )

              \*\*    \*\*    \*\*    \*\*    \*\*

This matter is before the Court upon Defendant Walter Kidde Portable Equipment's motion to exclude the opinion testimony of Dr. B. Don Russell [Record No. 39]. The response time has passed, and Plaintiffs have failed to file a response to Defendant's motion. Accordingly, this motion is ripe for review.

As an initial matter, the Court addresses Plaintiffs' failure to respond to Defendant's motion to exclude the testimony of their expert, Dr. Russell. Plaintiffs, as proponents of Dr. Russell's testimony, must establish its admissibility by "a preponderance of proof." *Daubert v. Merrell Dow Pharm., Inc.* 509 U.S. 579, 593 n.10 (1993) (citing Fed. R. Evid. 104(a); *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)). This Court is charged with the task of "gatekeeping" and determining whether expert testimony is "not only relevant, but reliable." *Id.* at 589. In carrying out this task in this case, the Court relies on a record that includes only

1

two pertinent documents, both of which were submitted by Defendant: Defendant's motion to exclude Dr. Russell's testimony and the portions of Dr. Russell's deposition that Defendant attached to its motion. Plaintiffs have not submitted anything to aid the Court in determining whether Dr. Russell's testimony is admissible.

**Background**

On September 1, 2001, the Lexington Fire Department responded to a 911 call from a resident of Sonnet Cove Apartments who reported smoke coming from the roof of an apartment building. After arriving at the scene and locating the fire in Shea Johnson's apartment, firefighters found Ms. Johnson on the floor of one of the bedrooms. Ms. Johnson was unresponsive at that time, and her cause of death was later reported as carbon monoxide intoxication due to smoke inhalation. An ionization smoke detector manufactured by Defendants was located in the apartment. Plaintiffs brought this wrongful death lawsuit seeking damages for the death of Shea Johnson. Plaintiffs have asserted four causes of action against Defendants: (1) a defect in design, workmanship, construction, and manufacture of the smoke detector, (2) breach of implied warranty of merchantability, (3) breach of implied warranty of fitness for a particular purpose, and (4) failure to warn of a design defect.

**Proposed Expert Testimony**

Dr. Russell's conclusions with respect to the instant case are based on the following reasoning: his prior research has shown

2

that ionization smoke detectors do not sound a timely warning to fires that start out with an incipient smoldering condition; a fire started in Ms. Johnson's apartment; Ms. Johnson had a ionization smoke detector in her apartment; Ms. Johnson died in the apartment, therefore, the ionization smoke detector did not sound at all or did not sound in a timely manner in order to alert her to the fire.

In his deposition, Dr. Russell claims that in the past, he has conducted tests on multiple smoke detectors to determine the time it takes for a detector to sound an alarm. Dr. Russell opines that all ionization smoke detectors suffer from a common design defect — they rely on ionization chambers alone, as opposed to a combination of ionization and photoelectric chambers, to detect smoke.

**Defendant's Motion to Exclude**

Guided by the evidence presented, the Court finds that Defendant's motion to exclude is well made. Defendant contends that the opinions of Plaintiffs' expert fail to meet the threshold requirements of Federal Rule of Evidence 702 and thus should be excluded by this Court. In *Daubert*, the Supreme Court set forth a framework to assist district courts in determining whether to admit expert testimony pursuant to Rule 702.[1] The proffered expert must

---

[1] Rule 702 of the Federal Rules of Evidence provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

3

establish his or her expertise by reference to "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  To establish a standard of "evidentiary reliability," the expert must testify to "scientific, technical or other specialized knowledge." *Id.*; *Daubert*, 509 U.S. at 588-89.  The Court looks to a non-exhaustive list of factors to assess the reliability of the expert's testimony including "the testability of the expert's hypotheses (whether they can be or have been tested), whether the expert's methodology has been subjected to peer review, the rate of error associated with the methodology, and whether the methodology is generally accepted within the scientific community."  *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000) (citing *Daubert*, 509 U.S. at 593-94).  The *Daubert* Court explained, "Proposed testimony must be supported by appropriate validation – *i.e.*, 'good grounds,' based on what is known."  *Daubert*, 509 U.S. at 590.  Not only must the expert's testimony be reliable, Rule 702 also requires that the testimony be relevant, which is a determination of whether that testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue."  *Id.* at 591  (quoting Fed. R. Evid. 702).

---

>    training, or education, may testify thereto in the form
>    of an opinion or otherwise, if (1) the testimony is based
>    upon sufficient facts or data, (2) the testimony is the
>    product of reliable principles and methods, and (3) the
>    witness has applied the principles and methods reliably
>    to the facts of the case.

Fed. R. Evid. 702.

4

It bears repeating that the party who proffers the expert testimony, in this case the Plaintiffs, must establish these threshold requirements of reliability and relevance. Without proper support from Plaintiffs — Plaintiffs neither responded to Defendant's motion nor submitted Dr. Russell's Rule 26(a)(2)(B) report to the Court — the Court cannot conclude that Dr. Russell's testimony is admissible. Plaintiff has presented no evidence that Dr. Russell's testimony would withstand analysis under the *Daubert* factors.

Defendant states that Dr. Russell's methodology has never been tested, his techniques or the general time-to-sound testing he has performed have never been subject to peer review, his techniques have no known error rate, and his conclusions are not generally accepted. Plaintiffs have presented no evidence that Dr. Russell's methodology has ever been tested, no evidence of peer review of Dr. Russell's testing, no information regarding a known error rate for Dr. Russell's testing, and no support for the proposition that his techniques are generally accepted.[2] The Court notes that the foregoing factors make up a non-exhaustive list, that this inquiry into expert testimony is flexible, and that each of these factors is a relevant but not dispositive consideration in assessing the

---

[2] The Court notes that Dr. Russell makes various references in his deposition to protocols he has followed for his tests, papers he has published, and designs he has submitted to smoke detector manufacturers. These vague references, however, are insufficient to show that Dr. Russell's methodology is reliable.

reliability of the methodology upon which Dr. Russell's testimony is premised. Nonetheless, the fact remains that the Court's inquiry into Dr. Russell's testimony is substantially hindered by Plaintiffs' failure to respond to Defendant's motion to exclude. Based on the evidence presented, this Court cannot conclude that the reasoning and methodology underlying Dr. Russell's testimony is reliable or that Dr. Russell "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

In forming his opinions, Dr. Russell did not take into account the particular circumstances of the fire in this case. Other than recognizing that the smoke detector in Ms. Johnson's apartment was an ionization smoke detector, he ignored the specifics of this case and based his conclusions on assumptions that were contradicted by other witnesses and physical evidence. For example, Dr. Russell concludes that "[i]onization chambers have a known deficiency for detecting the smoke products that are slowly moving from flameless combustion or low energy fires." (Russell Dep. 70:15-17, May 16, 2005.) He states that "[t]here's virtually no fire that isn't both [smoldering and flaming], unless there are accelerants involved." (Russell Dep. 94:10-11.) He also concludes that the detection times of smoke detectors with ionization chambers and detectors with photoelectric chambers versus these two types of fire are

6

"inversely related," that is, while ionization detectors sound more quickly to flaming fires and more slowly to smoldering fires, photoelectric detectors sound more quickly to smoldering fires and more slowly to flaming fires. (Russell Dep. 72:22-25.) But he dismisses the necessity of considering whether the fire in the instant case was the type of fire in which an ionization smoke detector would have sounded a timely alarm. Although Dr. Russell claims that he has performed many time-to-sound tests in the past, he has not tested his methodology in the context of this litigation. Dr. Russell did not consider the evidence presented by the investigating fire department that this was a flaming fire.[3] Dr. Russell did not support his reasoning for the conclusion that the smoke detector in Ms. Johnson's apartment did not sound a timely warning with any testing relating to the specific facts of the case. *See Pride*, 218 F.3d at 578 ("[Plaintiff's] experts failed timely to conduct replicable laboratory experiments demonstrating that the explosion and residual damage that occurred in the Pride lighter was consistent with a failure to extinguish incident caused by a manufacturing defect."). The Court concludes that Dr. Russell's testimony would not assist the jury in making a factual determination.

---

[3] In fact, Plaintiffs infer that this was a flaming fire. Plaintiffs, in their pretrial memorandum, explain that "the fire quickly spread to cabinets above the stove . . . [and t]he flames burned vigorously in the kitchen." (Pls.' Pretrial Mem. 4.)

The Court finds that Dr. Russell's testimony is not admissible.[4] Accordingly, **IT IS ORDERED**, that Defendant's motion to exclude Dr. Russell's testimony [Record No. 39] be, and the same hereby is, **GRANTED**.

This the 2nd day of February, 2006.



Signed By:
*Joseph M. Hood*
United States District Judge

---

[4] Absent expert testimony as to causation, the Court notes that it will be difficult, if not impossible, for Plaintiffs to withstand a motion under Fed. R. Civ. P.